UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SUPPRESSED
FILED
MAY 2 1 2014
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. **4:14CR153 ERW/TCM** |
| JAMES STALEY, | ) |
| Defendant. | ) ) ) |

# INDICTMENT

The Grand Jury charges that:

A. **INTRODUCTION AND BACKGROUND**

At times relevant to this Indictment:

1. Purportedly, premium financing involved the lending of funds to an insurer to cover the cost of an insurance premium for a fixed amount of time. Premium finance loans were often provided by third party finance entities known as a premium financing company which maintained lenders who provided the financing for the insurance premiums. The investor/lenders for the premium financing company would lend money for a fixed period of time with hope that they would ultimately receive a rate of return on the money they loaned. There were several ways the investor/lenders might receive a rate of return. First, if the insured died, then the insurance policy would pay off investor/lenders before paying off any beneficiaries. Second, the insured could pay off the loan himself. In this scenario, the insured would pay back the principle of the loan in addition to interest. The investor/lenders would receive their rate of return from the interest paid by the insured. Third, investor/lenders would have the ability to sell the insurance policy on the open market. Investor/Lenders might sell the insurance policy on the open market for an amount that would cover their initial loan and a rate of return.

2. In 2007, **JAMES STALEY**, a resident of Wentzville, Missouri, operated a company known as Wealth Financial International. In that same year, James Staley became a sales agent for a Premium Financing Company located in the state of California and known as B&B Equity ("B&B Premium Financing Company" or "B&B"). As a sales agent, **JAMES STALEY** found individuals to provide loans for life insurance policies. In many instances, several of these investor/lender's funds were bundled together to provide financing to purchase one life insurance policy. **JAMES STALEY** received a fee or commission for each investor/lender that he found to contribute financing for the purchasing of the life insurance policies.

B. **SCHEME TO DEFRAUD**

3. From at least approximately February 2008 through March 2010, in the Eastern District of Missouri, the defendant **JAMES STALEY**, knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money from investors throughout the United States by means of false and fraudulent pretenses, representations, and promises, to wit: the defendant knowingly made material false and fraudulent representations and promises to prospective investors/lenders to lure them into investing with B&B's Premium Financing Company, and in connection therewith, caused the use of interstate wires.

4. As a result of the aforesaid scheme and artifice to defraud, defendant **JAMES STALEY** defrauded approximately eleven investors/lenders by causing them to invest in over $3.4 million with B&B Premium Financing Company resulting in **JAMES STALEY** receiving commissions totaling over $570,000.

C. **WAYS AND MEANS**

5. B&B Premium Financing Company required the lender/investor to invest in the insurance policy for a fixed period of time. This fixed period of time varied from 18 months to 2 years. During this period of time, **JAMES STALEY** represented to clients of Wealth Finanical

2

International that B&B Premium Financing Company would sell the bundled insurance policies on the open market with guaranteed returns. However, in truth and fact, **JAMES STALEY** well knew that the lender/investor rate of return was based upon the selling of the policies on the open market. **JAMES STALEY** was well aware that if B&B Premium Financing Company was unable to secure a buyer for the bundled insurance policies that his clients would lose all their monies invested in the Premium Financing product sold by B&B.

6. In order to induce potential lender/investors to invest in B&B's Premium Financing Company, defendant **JAMES STALEY** made a number of materially false and fraudulent statements, representations, and promises as more fully set forth below, including, but not limited to:

   a. That the investment was safe, secure, and risk free;

   b. That the lender/investors were guaranteed a high rate of return;

   c. That Staley was well informed about the safety of the investments as well as facts being represented to investors;

   d. That Staley was personally invested in the Premium Financing product sold by B&B;

   e. That Staley's family members were invested in the Premium Financing product sold by B&B;

   f. That B&B Premium Financing Company had numerous potential buyers that were "lining up to purchase the product";

   g. That Warren Buffet and Time Warner were investing in similar products as the Premium Financing product sold by B&B.

7. During some part of the scheme but no later than the summer of 2009, **JAMES STALEY** became aware of the fact that B&B Premium Financing Company did not have buyers for the bundled insurance policies. **JAMES STALEY** was well aware that without buyers, the

3

investors/lenders would lose all the money they contributed to the financing of the bundled insurance policies. However, **JAMES STALEY** continued to lure investors/lenders into contributing funds for the purchase of these policies and continued to receive commissions for each investor/lender that provided funds.

## COUNT ONE

1. The Grand Jury realleges and incorporates by reference herein paragraphs One through Seven.

2. On or about May 29, 2009, within the Eastern District of Missouri, for the purpose of executing the foregoing scheme and artifice to defraud and to obtain money or property and attempting to do so,

### JAMES STALEY,

the defendant herein, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals, pictures and sounds by means of wire communication in furtherance and execution of said scheme, to wit: $50,000 was wired from Washington Mutual, account #643-8, in Roswell, Georgia, to Commerce Bank in Kansas City, Missouri, account #0579, in the name of James Staley, d/b/a Wealth Financial International.

In violation of Title 18, United States Code Section 1343.

RICHARD G. CALLAHAN
United States Attorney

A TRUE BILL.

_____
Dianna R. Collins #59641MO
Assistant United States Attorney

FOREPERSON