**FILED**

MAR 1 1 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.   S2 4:14-cr-00153 ERW |
| ) | |
| JAMES STALEY, ) | |
| Defendant. ) | |

### SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

### INTRODUCTION AND BACKGROUND

1. From in about 1999 to in or about December 2008, defendant **JAMES STALEY**, a resident of Wentzville, Missouri, was licensed by the Missouri Department of Insurance and worked as an insurance agent, selling various types of insurance products. **JAMES STALEY** was never registered as a securities agent or broker-dealer in Missouri and thus was not authorized to offer or sell securities in Missouri.

2. In or about February 2008, **JAMES STALEY** opened and incorporated Wealth Financial International, L.L.C. (WFI), as a Missouri limited liability company. Located in Chesterfield, Missouri, WFI offered financial consulting services, including recommending annuities for its clients to purchase. **STALEY** was the owner of WFI.

3. Also in or about 2008, **JAMES STALEY** became a sales agent, and later became national sales manager, for B&B Equity Group, LLC ("B&B Premium Financing Company" or "B&B"), a Nevada limited liability company, which was incorporated in or about January 2008. Robert Koppel, a resident of California in 2008, was the managing officer of B&B. Robert L. Eberle, a resident of Nevada in 2008, was also an officer of B&B.

4. Global Equity Resources, LLC (GER) is another Nevada limited liability company which was incorporated in or about October 2008. GER's registered agent is Global Equity Preservation, Inc., a/k/a Global Equity Preservation Trust, whose address is the same as the home address of Robert Eberle, an officer of B&B.

## SCHEME TO DEFRAUD

5. From at least February 2008 through in or about March 2010, in the Eastern District of Missouri, defendant **JAMES STALEY**, and others known and unknown to the grand jury, knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money from investors throughout the United States by means of false and fraudulent pretenses, representations, and promises, to wit: the defendant knowingly made material false and fraudulent representations and promises to prospective investors/lenders to lure them into investing with B&B's Premium Financing Company, and in connection therewith, caused the use of interstate wires.

6. As a result of the aforesaid scheme and artifice to defraud, defendant **JAMES STALEY** defrauded approximately seventeen investors/lenders by causing them to invest over $3.4 million with B&B Premium Financing Company, resulting in **JAMES STALEY** receiving commissions totaling over $570,000.

## MANNER AND MEANS

7. Defendant **JAMES STALEY**, and others acting in concert with him, performed the acts, described below, in furtherance of the scheme and artifice to defraud.

### False and Fraudulent Statements to Induce Investments

8. B&B required the lender/investor to invest in the premium financing program for a fixed period of time. This fixed period was generally 18 months to 2 years. In order to induce potential lenders/investors to invest, B&B made a number of materially false and fraudulent statements on its

2

website. Staley created the website in December 2008 and served as the website's registrant and administrator.

9. B&B and GER, on its website, described its business as follows:

   a. GER's "key strategy" is private insurance lending agreements which allow individual lenders the same quality access to "secure, fixed returns that have previously been only available to lending institutions and large banks;"

   b. The strength of the program is in the experience GER has in facilitating transactions in the premium financing marketplace and 100% success rate of every transaction since the company's inception;

   c. GER has two offices in the United States run by four principals.

   d. "Our Mission and Philosophy is to assist our clients in creating and maintaining investment portfolios that are designed to support their individual goals and desires while reducing taxation and providing for reduction of financial risk with the highest return;" and

   e. In the last few years, the secondary market for life insurance has exploded onto the financial planning scene."

10. The B&B and GER website described its investment program as follows:

    a. a safe lending instrument that yields double digit returns to their lenders;

    b. "In effect, the lender is simply privately financing insurance premiums" through the protection of an unlimited liability company and providing a short term loan to an individual in return for double digit returns on their money; and

    c. "The loan is FULLY collateralized in multiple ways" (emphasis in original).

11. In 2008, Wealth Financial International and **JAMES STALEY** had a number of clients, who owned annuities. As a sales agent for B&B, **JAMES STALEY** persuaded some of his clients to cash in their annuities and to invest the proceeds in the premium financing program that **JAMES STALEY** was offering through B&B. **JAMES STALEY** knew that his clients would have to pay substantial surrender fees when they cashed in their annuities. As an example, one investor/lender had to pay a surrender fee of about $38,000.

3

12. Of the monies received from the investors/lenders, at least 40% went to **JAMES STALEY** and B&B in the form of commissions and fees. The amount of the commissions and fees was not disclosed to the investors/lenders. **JAMES STALEY** received a 20% fee or commission for each investor/lender, whom he persuaded to invest in the B&B premium financing program. In one instance, **JAMES STALEY** received $80,000 of the $400,000 that one investor/lender invested. Additionally, B&B received a 20% commission or $80,000, thereby reducing the amount available for premium payments to $240,000.

13. In order to induce potential investors/lenders to invest in B&B's Premium Financing Company, **JAMES STALEY** made a number of materially false and fraudulent statements, representations, and promises, including, but not limited to:

   a. The investment was safe, secure, and risk free;

   b. The lender/investors were guaranteed a high rate of return;

   c. Staley was well informed about the safety of the investments as well as facts being represented to investors;

   d. Staley was personally invested in the premium financing product sold by B&B;

   e. Staley's family members were invested in the premium financing product sold by B&B;

   f. B&B Premium Financing Company had numerous potential buyers that were "lining up to purchase the product."

14. As part of each transaction, **JAMES STALEY** gave the investor/lender the following documents from B&B:

   a. Master Premium Funding Agreement with B&B (the "Premium Funding Agreement");

   b. Fiduciary Instructions and Supplement to Life Insurance Premium Funding Agreement:

4

    c.    Holding Fund Instructions and Supplement to Life Insurance Premium Funding Agreement; and

    d.    B&B Premium Funding Addendum.

15.    The Premium Funding Agreement made the following false representations and promises:

    a.    "B&B will provide . . . information regarding the specific premium funding opportunity(s) in the form of life insurance policies that have been priced and approved for sale on the secondary life insurance market . . ."

    b.    The Investment is "for a period of two years at a fixed rate of THIRTY percent (30%) of the loan plus a portion of the profit on the sale of the policy not to exceed FORTY percent (40%) of the loan;

16.    The B&B Premium Funding Addendum made the following representations and promises:

    a.    The Investor/Lender agrees to deposit [funds] with GEPT "for the purpose of funding premium financing loan for life insurance policy(ies);"

    b.    Term of the loan is 24 months;

    c.    Fixed return on dollar amount of loan is thirty percent (30%) over the 24 month period; and

    d.    Projected share of profits upon the sale of the policy (as reflected on the Policy Valuation Analysis).

17.    Throughout the fraud scheme, **JAMES STALEY** continued to falsely represent to investors/lenders that B&B would sell the bundled insurance policies on the open market and the investor/lender would receive a guaranteed rate of return. However, in truth and fact, **JAMES STALEY** well knew that the lender/investor's rate of return was not guaranteed. Further, at the time **JAMES STALEY** made these representations and promises, he was well aware that the investors/lenders would lose all the monies they had invested, if B&B was unable to sell the insurance policies.

**False and Fraudulent Statements to Recruit Agents**

18.    After **JAMES STALEY** knew that B&B was unable to sell the bundled policies in the secondary market, he continued to recruit agents to market and sell the B&B premium financing product.

5

In recruiting agents for B&B, **JAMES STALEY** made the same or similar materially false and fraudulent statements, representations, and promises to the agents regarding the B&B premium financing product, as set forth above in paragraph 13 of this indictment.   19.   Relying on **JAMES STALEY,** the agents provided the same false information to their clients to induce them to invest in the B&B premium financing product.   As a result, several investors/lenders in Florida were induced to invest in the B&B premium financing product and ultimately lost all the monies they had invested.

**March 2009 Order of the Missouri Securities Division**

20.   In March 2009, the Securities Division of the Office of the Secretary of the State of Missouri (Securities Division) advised **JAMES STALEY** in writing that he was prohibited from offering or selling securities, specifically the B&B premium financing product, in Missouri because he was not registered as an agent or a broker-dealer to sell securities in Missouri. **JAMES STALEY** was also informed that certain statements made to investors were untrue statements of material facts or failed to disclose material facts to the investors. These false statements were expressly identified in the document provided to **JAMES STALEY.**

21.   After receiving the March 2009 order of the Securities Division, **JAMES STALEY** continued to offer and sell the B&B premium financing product, although he knew that it was illegal for him to do so.  **JAMES STALEY** also continued to make the same false and fraudulent statements to potential investor/lenders. At no time thereafter did **JAMES STALEY** advise investors of the Securities Division's investigation and determination, information that any investor/lender would want to know.

## COUNT ONE

22.   The Grand Jury re-alleges and incorporates by reference herein paragraph 1 through 21.

6

23. On or about May 29, 2009, within the Eastern District of Missouri, for the purpose of executing the foregoing scheme and artifice to defraud and to obtain money or property and attempting to do so,

**JAMES STALEY,**

the defendant herein, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals, pictures and sounds by means of wire communication in furtherance and execution of said scheme, to wit: $50,000 was wired from Washington Mutual, account #643-8, in Roswell, Georgia, to Commerce Bank in Saint Peters, Missouri, account #0579, in the name of James Staley, d/b/a Wealth Financial International.

In violation of Title 18, United States Code, Sections, 1343 and 2.

## COUNT TWO

24. The Grand Jury re-alleges and incorporates by reference herein paragraphs 1 through 21.

25. On or about August 25, 2009, within the Eastern District of Missouri, for the purpose of executing the foregoing scheme and artifice to defraud and to obtain money or property and attempting to do so,

**JAMES STALEY,**

the defendant herein, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals, pictures and sounds by means of wire communication in furtherance and execution of said scheme, to wit: $12,731.57 was wired from Washington Mutual, account #643-8, in Roswell, Georgia, to Commerce Bank in Saint Peters, Missouri, account #0579, in the name of James Staley, d/b/a Wealth Financial International.

In violation of Title 18, United States Code, Sections, 1343 and 2.

## COUNT THREE

26. The Grand Jury re-alleges and incorporates by reference herein paragraphs 1 through 21.

27. On or about September 2, 2009, within the Eastern District of Missouri, for the purpose of executing the foregoing scheme and artifice to defraud and to obtain money or property and attempting to do so,

**JAMES STALEY,**

the defendant herein, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals, pictures and sounds by means of wire communication in furtherance and execution of said scheme, to wit: $27,000 was wired from Washington Mutual, account #643-8, in Roswell, Georgia, to Commerce Bank in Saint Peters, Missouri, account #0579, in the name of James Staley, d/b/a Wealth Financial International.

In violation of Title 18, United States Code, Sections, 1343 and 2.

## COUNT FOUR

26. The Grand Jury re-alleges and incorporates by reference herein paragraphs 1 through 21.

27. On or about March 12, 2010, within the Eastern District of Missouri, for the purpose of executing the foregoing scheme and artifice to defraud and to obtain money or property and attempting to do so,

**JAMES STALEY,**

the defendant herein, did knowingly and willfully transmit and cause to be transmitted in interstate commerce certain writings, signs, signals, pictures and sounds by means of wire communication in furtherance and execution of said scheme, to wit: $18,000 was wired from Washington Mutual, account #643-8, in Roswell, Georgia, to Commerce Bank in Saint Peters, Missouri, account #0579, in the name of James Staley, d/b/a Wealth Financial International.

In violation of Title 18, United States Code, Sections, 1343 and 2.

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
Dianna R. Collins #59641MO
Assistant United States Attorney

9